IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**COLUMBIAN CHEMICALS**
**COMPANY,**

 **Plaintiff,**               Civil Action No.: 5:14-cv-00166
v.                     Hon. John Preston Bailey

**AIG SPECIALTY INSURANCE**
**COMPANY f/k/a CHARTIS**
**SPECIALTY INSURANCE**
**COMPANY,**

 **Defendant.**

**DEFENDANT AIG SPECIALTY INSURANCE COMPANY'S MEMORANDUM IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

 **I.**   **Introduction**

  AIG Specialty Insurance Company f/k/a Chartis Specialty Insurance Company ("AIG Specialty") has no duty to indemnify Columbian Chemicals Company ("CCC") for its settlement of an underlying putative class action, because CCC entered into the settlement before even notifying AIG Specialty of the lawsuit and without obtaining AIG Specialty's consent.  CCC notified AIG Specialty more than a year after the lawsuit was filed, and months after CCC entered into a settlement of $8 million for distribution to anyone who could show he lived, or owned property, within four miles of CCC's carbon black plant in Proctor, West Virginia (the "Proctor Plant") – without a showing that the class members suffered any bodily injury or property damage.  CCC violated the AIG Specialty policy's requirement that CCC give AIG Specialty notice of claims "as soon as possible," and the requirement that CCC not voluntarily enter into settlements or make payments without AIG Specialty's consent.  For both of these independent reasons, or either one of them, AIG Specialty has no duty to indemnify CCC as a

matter of law.

## II. Statement Of Facts

### A. CCC Allegedly Emits Carbon Black For Forty Years.

Beginning in 1971, CCC began carbon black operations at the Proctor Plant, near the Ohio River and the Ohio / West Virginia border. (Ex. A, Compl. ¶ 6.) Carbon black is a form of powdery carbon with a variety of industrial uses. (*Id.* ¶ 7.) It is used as a reinforcing filler in rubber products, such as tires. (*Id.*) It is also used as a color pigment in paints, plastic and inks. (*Id.*) CCC manufactured carbon black at its Proctor Plant until 2009, when it shut down the plant and ceased production. (*Id.* ¶ 6.)

Residents surrounding the Proctor Plant complained that, during the nearly 40 years the Proctor Plant operated, it emitted carbon black into the air, which drifted onto surrounding areas and came to rest on their property. (*Id.* ¶ 21.) The carbon black allegedly was sticky, and difficult to wipe or clean off the skin and objects such as homes, buildings, cars, and boats. (*Id.* ¶ 9.) The residents also allegedly feared carbon black and related compounds could result in adverse health consequences. (*Id.* ¶ 11.)

### B. The Class Alleges Actual Damage And Potential Future Damage From Exposure To Carbon Black.

On April 9, 2013, Marissa Talkington, on behalf of herself and residents residing or owning property within four miles of the Proctor Plant, filed suit against CCC. (*See generally id.*) The complaint alleged that the putative class sustained property damage and risk of future bodily injury as a result of the exposure to carbon black. (*Id.* ¶ 52.) The *Talkington* complaint set forth purported claims against CCC for negligence, infliction of emotional distress, private nuisance, trespass, and medical monitoring.

Ten months after Talkington filed the complaint, CCC settled *Talkington*. (Ex. B.) In the

February 2014 settlement, CCC agreed to a certified class that covered all owners or occupants of land used for residential purposes between 1971 and 2009 within a four-mile radius of the Proctor Plant. (*Id.* §§ 2.25, 2.26.) CCC agreed that any resident or owner who submitted a valid claim form would receive a cash payment from an $8 million fund CCC would establish. (*Id.* §§ 4.2, 4.3.) These payments would be based on a series of factors, including the distance from the Proctor Plant, the duration of residence, and the ownership interest in the property. (*Id.*) Actual injury or damage was not a factor. (*Id.*) CCC maintained the right to withdraw from the settlement only if there were an excessive number of opt-outs from the settlement class. (*Id.* § 3.8.) On February 28, 2014, the state court issued an order conditionally certifying the settlement class and preliminarily approving the settlement amount. (Ex. C.) Notice went out to the class on April 1, 2014. (Ex. D.)

### C. AIG Specialty Receives Notice Of The *Talkington* Lawsuit After Settlement.

CCC did not give AIG Specialty notice of the *Talkington* lawsuit when it was filed, or at any point prior to settlement and court approval in February 2014. According to AIG Specialty's files, CCC first mentioned the *Talkington* lawsuit in a passing reference in a July 2014 letter mentioning other claims, which did not disclose that CCC settled *Talkington*. (Ex. E.)[1] It is undisputed that CCC did not ask AIG Specialty to approve and participate in the settlement until August 2014 – mere days before the hearing on final approval. (Ex. F.)

CCC first requested AIG Specialty's consent to the $8,000,000 settlement, and agreement to fund it, just days before the final approval. (Ex. F, p. 3.) AIG Specialty promptly informed CCC that it had no record that CCC tendered the *Talkington* lawsuit, had no knowledge of the settlement, and did not have the complaint or any of the other information necessary to assess the

---

[1] CCC claims it first mentioned the *Talkington* lawsuit and settlement to AIG Specialty two months earlier, on May 14, 2014. (Ex. G, p. 2.) AIG Specialty has not been able to determine if it received the May 14, 2014 letter. The purported May 14 letter did not request AIG Specialty's authority to settle, and did not seek any money from AIG Specialty. *Id.* Regardless of whether notice came in May or July, it indisputably came after settlement.

3

reasonableness of a settlement. (*Id.*) Shortly thereafter, AIG Specialty issued a letter to CCC reserving its rights to deny coverage on several bases. (Ex. H.) AIG Specialty also advised CCC that it did not have information sufficient to evaluate the reasonableness of the settlement, and AIG Specialty therefore was not in a position to consent to the settlement. (*Id.* p. 1.)

On August 19, 2014, the state court entered an Order Granting Final Approval of the Class Action Settlement. (Ex. I.) The order fully and finally terminated and dismissed with prejudice all claims of all class members in the class action against CCC. (*Id.* at pp. 11-12.)

### D. The AIG Specialty Policy's Coverage Is Contingent On Timely Notice, And Does Not Cover Voluntary Payments.

AIG Specialty issued Pollution Legal Liability Select Policy No. PLS 14230698 to CCC for the period December 15, 2009 to December 15, 2014 (the "Policy"). (Exhibit J, p. 1.) The Policy was issued to CCC at its headquarters in Marietta, Georgia, and was procured by a broker based in Atlanta, Georgia. (*Id.* at 3.)

Pursuant to Coverage F, the Policy covers certain sums CCC is "legally obligated to pay" as a result of third-party "claims" for off-site bodily injury and property damage resulting from pre-existing conditions:

> [T]he Company agrees with the **Named Insured**[2] as follows:
>
> . . .
>
> To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** resulting from **Pollution Conditions**, beyond the boundaries of the **Insured Property**, that migrated from the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**. . . .

(*Id.* at p. 10). A "Claim" is defined, in pertinent part, as a written demand received by CCC "seeking a remedy or alleging liability or responsibility on the part of" CCC. (*Id.* at p. 20.)

---

[2] Bold terms are defined within the Policy. (Ex. J.)

4

The Policy also contains conditions precedent to coverage. First, CCC must give AIG Specialty notice of "claims" "as soon as possible." (*Id.* at p. 14.) When a "claim" is made, CCC is required to forward to AIG Specialty "as soon as possible," among other documents, "[a]ll demands, summonses, notices or other process or papers filed with a court of law, administrative agency or an investigative body." (*Id.*)

The Policy also requires as a condition of coverage that CCC not make voluntary payments without AIG Specialty's consent:

> No **Insured** shall voluntarily enter into any settlement, or make any payment or assume any obligation unless in response to an emergency or pursuant to **Environmental Laws** that require immediate remediation of **Pollution Conditions**, without the Company's consent which shall not be unreasonably withheld, except at the **Insured's** own cost.

(*Id.* at p. 17.)

### III. Argument

#### A. Summary Judgment Is Appropriate Where, As Here, There Is No Genuine Dispute As To Any Material Fact.

Summary judgment is appropriate when the moving party shows there is no genuine dispute as to any material fact, and the movant is entitled to summary judgment as a matter of law. *McNeilly v. Greenbrier Hotel Corp.*, 16 F. Supp. 3d 733, 736 (S.D.W. Va. 2014). A fact is material only when it could affect the outcome of the case. *Id.* To avoid summary judgment, the nonmoving party must offer some concrete evidence from which a reasonable juror could return a verdict in his favor. *Id.* The nonmovant must come forward with more than "mere speculation or the building of one inference upon another" to resist dismissal. *Id.*

#### B. Georgia Law Governs Because The Policy Was Delivered In Georgia.

West Virginia's choice of law rules apply because this federal court sits in West Virginia. *Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014). In contract disputes,

5

West Virginia follows the rule of *lex loci contractus*. *Id.* The Supreme Court of West Virginia has instructed that where an insurance policy is made in one state and performed in another, "the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state." *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 390 S.E.2d 562, 567 (W. Va. 1990). Here, the Policy was issued to CCC at its address in Marietta, Georgia, through brokers located in Atlanta, Georgia. Therefore, Georgia law applies unless another state has a more significant relationship to this coverage dispute.

To determine whether another state has a more significant relationship, the court in *Triangle* looked to several factors listed in the Restatement (Second) of Conflict of Laws § 6, including: (1) the needs of the interstate and international systems, (2) the protection of justified expectations, (3) certainty, predictability and uniformity of result, and (4) ease in the determination and application of the law to be applied. *See Scottsdale Ins. Co. v. Harleysville Ins. Co.*, No. 1:11CV33, 2013 WL 6813905, at *6 (N.D.W. Va. Dec. 24, 2013) (discussing *Triangle* and noting these four factors take priority over the remaining factors in § 6). Even where other states have significant relationships to the transaction, such as being the location of the insured risk, the strong preference remains for the state in which the policy was bargained for, agreed to, and issued. *Triangle,* 390 S.E.2d at 567.

Here, Georgia law applies to the dispute between CCC and AIG Specialty. The contract was entered into in Georgia. In determining the applicability of the first factor, the needs of the interstate system, and the third factor, the certainty and predictability and uniformity of result, courts emphasize that the choice of law that will provide consistent and uniform results best satisfies both these factors. *Triangle*, 390 S.E. 2d at 567. Applying Georgia law ensures predictable and uniform results by ensuring that a single state's law will apply consistently to

any dispute that may arise out of the Policy. The Proctor Plant is located near the Ohio River and close to the border between Ohio and West Virginia. Applying the law where the claim arises could result in inconsistencies amongst claims, depending on whether the claim arises in Ohio or West Virginia. The first and third factors therefore weigh in favor of Georgia law.

The second factor, the parties' justified expectations, refers to the parties' understanding as to which law would be applied to any potential dispute. *M & S Partners v. Scottsdale Ins. Co.*, No. Civ 2:04-1221, 2006 WL 995136, *7 (S.D. W. Va. Apr. 11, 2006). Where no choice of law clause exists in the insurance policy, the parties do not have any justified expectation beyond *lex loci contractus* as to the law applicable to the policy. *Id.* (insurance company and insured had no justified expectation as to the applicable law). Here, therefore, there is no indication that either party justifiably expected the law of any state other than Georgia to apply.

The fourth factor, the ease in the determination and application of the law to be applied, also favors Georgia. As discussed below, Georgia law regarding late notice and voluntary payment is well-settled and provides clear guidance. West Virginia law, on the other hand, is unsettled. Georgia law is easily discernable and straight-forward to apply in these circumstances, because it represents the clear application of policy language.

Because applying Georgia law is consistent with the factors outlined in *Triangle*, Georgia law should apply to this coverage dispute. West Virginia's relationship to this dispute is not sufficient to overcome the parties' expectations and the principle of *lex loci contractus*. There is no basis for an insured located in Georgia, using a Georgia-based broker to procure coverage from a New York-based insurer, to expect application of West Virginia law to govern any dispute arising from the contract.

### C. Coverage Is Unavailable Because CCC Failed To Provide Timely Notice Of The *Talkington* Lawsuit.

#### a. The Notice CCC Provided To AIG Specialty Was Unreasonably Late As A Matter Of Law Under Applicable Georgia Law.

Under Georgia law, an insurer is excused from providing coverage if an insured unreasonably fails to provide timely notice as required by a policy. *Forshee v. Employers' Mut. Cas. Co.*, 711 S.E.2d 28, 31-32 (Ga. App. 2011). Timely notice serves an important function, as it permits the insurer to investigate claims at an early stage and control the defense where appropriate, while preserving an insurer's right to cover only those claims actually insured by the policy. *Arch Specialty Ins. Co. v. Go-Mart, Inc.*, No. CIV. A. 2:08-0285, 2009 WL 5214916, at *9-10 (S.D. W. Va. Dec. 28, 2009). The insured must give notice "with reasonable diligence and within a reasonable length of time in view of the attending circumstances . . . ." *Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 652 F. Supp. 851, 856 (N.D. Ga. 1986). An insured's unexcused delay to provide notice may be unjustified and unreasonable as a matter of law. *Plantation Pipeline v. Royal Indem. Co.*, 537 S.E.2d 165, 167 (Ga. App. 2000).

Courts in Georgia routinely hold that unjustified delays of four to eight months are unreasonable as a matter of law. *See, e.g.*, *Dillard v. Allstate Ins. Co.,* 245 S.E.2d 30 (1978) (eight-month delay in reporting accident to insurer was not excused as a matter of law under policy requiring notice "as soon as practicable"); *Bituminous Casualty Corp. v. J.B. Forrest & Sons,* 209 S.E.2d 6 (Ga. Ct. App. 1974) (four-month delay in providing notice insufficient as a matter of law); *see also KHD Deutz of America Corp. v. Utica Mut. Ins. Co.,* 469 S.E.2d 336 (1996) (delay as little as a month can be insufficient as a matter of law).

Here, the Policy requires written notice of pollution conditions or claims, and provision of all papers filed with the court, "as soon as possible." (Ex. J at 14.) Yet, without explanation, CCC failed to provide notice for over a year after the *Talkington* lawsuit was filed and at least

8

three months after it was settled. By the time CCC first mentioned *Talkington* to AIG Specialty (whether in May or July 2014), it already had entered into a settlement and agreed to fund a class settlement of up to $8,000,000. (Ex. B.) The state court judge overseeing the action had preliminarily approved the settlement. (Ex. C.) Notice of the settlement already had been sent to the class members. (Ex. D.) All that was left was for the opt-out period to run out and the court to finalize its approval. AIG Specialty had no opportunity to investigate, defend, or negotiate a settlement of the case. No circumstances exist that would excuse CCC's failure, rendering the notice untimely as a matter of law. *See, e.g.*, *Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*, 592 F. App'x 803, 808 (11th Cir. 2014) (notice seven months after default judgment untimely as a matter of law).

Georgia law does not require that AIG Specialty demonstrate prejudice to rely on the late notice provisions of the Policy. *Canadyne-Georgia Corp. v. Cont'l Ins. Co.*, 999 F.2d 1547, 1557 (11th Cir. 1993) (finding Georgia courts repeatedly confirm the rule that an insurer need not prove prejudice to assert notice provision as a defense to coverage) (citing *Townsend v. Nat'l Union Fire Ins. Co.,* 397 S.E.2d 61, 63 (Ga. App. 1990) ("prejudice or the lack thereof to the insurer is not a factor in assessing whether or not the delay in notice is excusable")); *Cotton States*, 652 F. Supp. at 856-57 (finding prejudice is inherent in late notice of a claim). The notice requirement is a precondition of coverage, and one that CCC cannot demonstrate it has satisfied. Because CCC's notice of the claim was untimely as a matter of law, summary judgment is appropriate in favor of AIG Specialty.

### b. Alternatively, The Notice CCC Provided To AIG Specialty Was Unreasonably Late As A Matter Of Law Under West Virginia Law.

West Virginia courts only consider whether late notice prejudiced an insurer if the insured offers a reasonable explanation for the delay. *Dairyland Ins. Co. v. Voshel*, 428 S.E.2d

542 (W. Va. 1993); *Med. Assurance of W. Va., Inc. v. U.S.*, 233 F. App'x 235, 237 (4th Cir. 2007). Where, as here, the insured fails to offer a reasonable explanation, the delay is considered unreasonable as a matter of law. *Id.* Like Georgia, courts in West Virginia routinely find delays of even just a few months to be unreasonable as a matter of law. *See, e.g.*, *United Nat. Ins. Co. v. Lee*, 51 F. App'x 407, 410-11 (4th Cir. 2002) (six-month delay unreasonable as a matter of law); *Arch Specialty I*, 2009 WL 5214916 at *9-10 (32-month delay unreasonable as a matter of law). As discussed above, CCC has not and cannot provide any explanation for its unreasonable delay in notifying AIG Specialty of the *Talkington* lawsuit. CCC therefore has failed to satisfy its contractual obligations under West Virginia as well as Georgia law, and AIG Specialty is not obligated to provide coverage to CCC.

Moreover, AIG Specialty has been prejudiced. CCC negotiated and settled the *Talkington* lawsuit without providing AIG Specialty an opportunity to investigate the claim or participate in its settlement. *See Go-Mart, Inc.*, 2009 WL 5214916 at *10 (depriving insurer of opportunity to investigate, defend, or settle the claim is prejudicial to the insurer's rights). Indeed, CCC negotiated a settlement that permitted any class member to receive money without having to demonstrate any bodily injury or property damage whatsoever, while the Policy covers in relevant part only claims for "bodily injury" and "property damage." The *Talkington* complaint alleged claims including trespass, nuisance, and fear of future injury – claims that potentially do not qualify as bodily injury or property damage. (Ex. A.) By failing to provide notice of the *Talkington* lawsuit, CCC deprived AIG Specialty of its ability to investigate the class's claims and determine what coverage, if any, was available. If prejudice were necessary – which it is not – it is clearly present and CCC is not entitled to coverage under the Policy.

### D. Coverage For The *Talkington* Settlement Is Unavailable Because CCC Entered Into It Without AIG Specialty's Consent.

#### a. CCC's Voluntary Payments Are Not Coved As A Matter Of Law Under Applicable Georgia Law.

Coverage is also unavailable to CCC because CCC settled without AIG Specialty's consent. The Policy provides coverage only for sums that CCC becomes "legally obligated to pay." (Ex. J at 1.) The Policy also contains a "Voluntary Payments" condition (Condition E), providing that no insured can voluntarily enter into a settlement, make a payment, or assume an obligation (except in emergency circumstances not present here) without AIG Specialty's consent.

Applying virtually identical policy provisions, the Georgia Supreme Court held that both the "legally obligated to pay" requirement in the insuring agreement and the "voluntary payments" condition relieve an insurer of coverage obligations for settlements entered into without the insurer's consent. *Trinity Outdoor, LLC v. Centennial Mutual Ins. Co.,* 679 S.E.2d 10 (Ga. 2009). In *Trinity Outdoor*, the insured settled a third-party claim without its general liability insurer's consent. As here, the insurance policy at issue in *Trinity Outdoor* expressly provided that: (1) the insurer will pay only sums the insured is legally obligated to pay; and (2) "[no] insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without [the insured's] consent." *Id.* at 12. The Georgia Supreme Court held that coverage was not available for the settlement based on the plain terms of the voluntary payment provision and the fact that a voluntary settlement is not an amount the insured is "legally obligated to pay." By definition, "[a] voluntary payment does not constitute a legal obligation." *Id.* Prejudice is irrelevant. *Hathaway Dev. Co., Inc. v. Ill. Union Ins. Co.,* 274 F. App'x 787, 791 (11th Cir. 2008) (Under Georgia law, no prejudice is necessary to decline coverage where insured undertook to fix defects and make payments to residents

following a construction problem without the consent of its insurer).

Here, CCC's actions plainly do not satisfy the insuring agreement's "legally obligated to pay" requirement and violate the conditions of the Policy. CCC entered into the $8 million settlement agreement with the class plaintiffs months before it even notified AIG Specialty of the existence of the *Talkington* lawsuit, and without regard to whether a single class plaintiff had suffered property damage or bodily injury. (Ex. B.) CCC even obtained final court approval of the settlement without AIG Specialty's permission, and after AIG Specialty had expressly reserved the right to invoke the Voluntary Payments condition. (Exs. I, F.) By the unambiguous terms of the Policy, CCC's settlement is not covered because it is not an amount CCC was legally obligated to pay, and because it constitutes a voluntary payment.

The court's approval of the *Talkington* settlement agreement does not turn the settlement into an involuntary payment CCC was legally obligated to pay. In *Piedmont Office Realty Trust, Inc. v. XL Specialty Ins. Co.*, 11 F. Supp. 3d 1184 (N.D. Ga. 2014), Piedmont settled a federal securities fraud action for $4.9 million with court approval but without XL's consent. Piedmont argued that the court's approval of the settlement created a legal obligation to pay, thus converting a voluntary payment into a covered obligation. *Id.* at 1190. The court squarely rejected that argument. The court, following *Trinity Outdoor*, held that the plain terms of the policy governed and expressly provided that XL was only obligated to pay amounts that Piedmont became "legally obligated" to pay. *Id.* The court plainly reasoned that the fact the court approved the settlement did not convert Piedmont's "unilateral and deliberate actions" into a "legal obligation." *Id.* at 1191. The court found that "[t]he 'voluntary act' occurred here when the Plaintiff unilaterally settled the claim without the Defendant's consent. *That 'voluntary act' was completed before the district court approved the settlement agreement*." *Id.* at 1192 (emphasis added).

On appeal of *Piedmont Office Realty Trust*, the Eleventh Circuit certified three questions to the Supreme Court of Georgia, including whether Piedmont was legally obligated to pay the settlement in light of the court order authorizing the settlement. 769 F.3d 1291. The Supreme Court of Georgia agreed that Piedmont was not legally obligated to pay, and that the voluntary payment clause precluded Piedmont's claim. 771 S.E.2d 864 (Ga. Apr. 20, 2015). Based on this determination, the Eleventh Circuit affirmed the dismissal of Piedmont's complaint. No. 14-11987, 2015 WL 3853022 (11th Cir. June 23, 2015).

Here, CCC's voluntary act was agreeing to the settlement. The fact that the settlement required a court order does not confer coverage on the settlement. CCC is not entitled to coverage because it voluntarily entered into the settlement and paid millions of dollars without approval from (or even notice to) AIG Specialty.

### b. Alternatively, CCC's Voluntary Payments Are Not Covered As A Matter Of Law Under West Virginia Law.

Though the unambiguous language of the Policy's voluntary payments clause does not require that the voluntary payment prejudice the insurer, a few state courts have imposed such a requirement. As noted above, Georgia is not one of them. West Virginia law is silent as to whether the voluntary payment provision of an insurance policy is a precondition to coverage regardless of prejudice. The Fourth Circuit has held that West Virginia's sister jurisdictions do not require prejudice. *See, e.g.*, *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 104 (4th Cir. 2013) (under Maryland law, settlement without insurer's consent is a voluntary payment and precondition to coverage; prejudice not required). This is consistent with the prevailing law in a majority of jurisdictions that do not require a showing of prejudice. *See, e.g.*, *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341 (4th Dist. 1999) (no prejudice required under California law); *In re Texas Eastern Transmission Corp.*, 15 F.3d 1249

(3d Cir. 1994) (no prejudice under Pennsylvania law); *Augat, Inc. v. Liberty Mut. Ins. Co.*, 571 N.E.2d 357 (Mass. 1991) (no prejudice under Mass. law). Were the Court to apply West Virginia law, it should hold that there is no requirement of prejudice for the voluntary payments provision to apply.

Further, if the Court applies West Virginia law and requires a showing of prejudice, then AIG Specialty has met that standard as a matter of law. CCC settled the claim without ever informing AIG Specialty of the claim's existence, and its settlement does not require a single plaintiff to actually demonstrate any bodily injury or property damage that would potentially be covered by the Policy. CCC's settlement cut off AIG Specialty's right to investigate the claims and determine for itself what settlement, if any, would have been appropriate in light of the claims made in the *Talkington* lawsuit. Under either West Virginia or Georgia law, CCC's decision to voluntarily pay settlement constitutes a voluntary payment CCC has entered into at its own cost.

## IV. Conclusion

CCC failed to give AIG Specialty timely notice of the *Talkington* lawsuit, and voluntarily settled the lawsuit without AIG Specialty's consent. CCC's untimely notice over 13 months after receiving the *Talkington* lawsuit violated its duty to report claims made against it as soon as possible. CCC's decision to enter into a binding settlement under which it would pay $8 million without seeking authorization from or even notifying AIG Specialty violated its duty not to enter into voluntary payments. For these reasons, the Policy does not provide coverage for the *Talkington* settlement.

**WHEREFORE**, AIG Specialty requests that this Court grant its motion for summary judgment, enter summary judgment in favor of AIG Specialty on CCC's causes of action for Declaratory Relief (Count I) and Breach of Contract (Count II) and on the Third Claim (Late

Notice) and Fourth Claim (Voluntary Payments) of AIG Specialty's Counterclaim, and grant AIG Specialty such further and additional relief as this Court deems just.

**AIG SPECIALTY INSURANCE COMPANY, f/k/a CHARTIS SPECIALTY INSURANCE COMPANY**

/s/ Laura E. Hayes
Don C. A. Parker (WV State Bar # 7766)
Laura E. Hayes (WV State Bar # 7345)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (ZIP 25301)
Post Office Box 273
Charleston, WV 25321-0273
304-340-3896
dparker@spilmanlaw.com
lhayes@spilmanlaw.com

Matthew J. Fink *(admitted pro hac vice)*
Amy J. Collins *(admitted pro hac vice)*
Nicolaides Fink Thorpe Michaelides Sullivan LLP
71 S. Wacker Drive, 44th Floor
Chicago, IL 60606
312-585-1400
mfink@nicolaidesllp.com
acollins@nicolaidesllp.com

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**COLUMBIAN CHEMICALS
COMPANY,**

      **Plaintiff,**                                  Civil Action No.: 5:14-cv-00166

v.                                              Hon. John Preston Bailey

**AIG SPECIALTY INSURANCE
COMPANY f/k/a CHARTIS
SPECIALTY INSURANCE
COMPANY,**

      **Defendant.**

### CERTIFICATE OF SERVICE

     I, Laura E. Hayes, hereby certify that on June 30, 2015, I electronically filed the foregoing **Defendant AIG Specialty Insurance Company's Memorandum in Support of Its Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Jay T. McCamic, Esquire
> McCamic, Sacco & McCoid PLLC
> 56-58 Fourteenth Street
> Box 151
> Wheeling, WV 26003
>
> J. Kevin Buster, Esquire
> King & Spalding LLP
> 1180 Peachtree Street, NE
> Atlanta, GA 30309

     I also certify that I have forwarded a copy of the foregoing **Defendant AIG Specialty Insurance Company's Memorandum in Support of Its Motion for Summary Judgment** by United States Mail, postage prepaid, to the following:

> Anthony P. Tatum
> Paul J. Murphy
> Shelby S. Guilbert
> King & Spalding, LLP
> 1180 Peachtree St., NE
> Atlanta, GA 30309-3521

                                                           /s/ Laura E. Hayes
                                                          Laura E. Hayes (WV State Bar # 7345)